Daniel Gene **CUMMINGS**, Appellant

v.

**COMMONWEALTH of Kentucky,** Appellee.

No. 2005–SC–000479–MR.

Supreme Court of Kentucky.

June 21, 2007.

Daniel T. Goyette, Louisville Metro Public Defender, Bruce P. Hackett, Deputy Appellate Defender, Louisville, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Frankfort, Jason Philip Snyder, Assistant Commonwealth Attorney, Louisville, Counsel for Appellee.

Opinion of the Court by Justice McANULTY.

On March 22, 2005, Daniel Cummings (Appellant) pleaded guilty to fifty-three charged offenses which consisted of multiple counts of rape, sodomy, and burglary, in addition to related charges of burglary, robbery, illegal use of a credit card and kidnapping. The charges were listed in three separate indictments that were ultimately consolidated, and included offenses ranging in time from February 1998 through August 2002.[1] Appellant appeals as a matter of right, arguing that his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), were violated and that his 470–year sentence is in violation of KRS 532.110(1)(c).

### I. Waiver of Fifth Amendment Right to Counsel

Appellant was arrested in September of 2002. He waived his *Miranda* rights and detectives began questioning him, using a tape recorder to record the interrogation. At some point during the interrogation, Appellant invoked his right to counsel and detectives immediately stopped questioning him and turned off the tape recorder. Detective Bryan Arnold stayed with Appellant when Detective Larry Duncan left the room.

According to Detective Arnold, Appellant shortly thereafter initiated conversation with him. Detective Arnold told Appellant he did not know if he could talk with him since Appellant had already asked for an attorney. Detective Arnold said Appellant stated that he would talk with Detective Arnold without a lawyer present. Detective Arnold informed Appellant that he had to readvise him of his *Miranda* rights, and did so. None of this exchange was tape-recorded. Outside the room, Detectives Duncan and Wilfong listened to the conversation. Before long, Detective Duncan instructed Detective Wilfong to go into the office and question Appellant about other rapes he was suspected of committing. The tape recorder was eventually turned back on and Appellant made incriminating statements.

Appellant moved to suppress the statements. At a hearing on the motion to

---

**1.** Indictment 02–CR–002050 included offenses committed between February 1998 and November 1998; Indictment 02–CR–002312 included offenses committed between February 2001 and March 2001; Indictment 02–CR–001943 included offenses committed between November 2000 and August 2002.

suppress, Detective Arnold and Detective Duncan testified that Appellant was twice readvised of his *Miranda* rights and waived them. The detectives then resumed interrogation but did not restart the tape recorder. Appellant stated that he did not initiate conversation with Detective Arnold and alleged that while the tape recorder was turned off, Detective Duncan threatened him and his family.

The trial court denied his motion, focusing on the absence of any evidence of coercion, threat, or discomfort in the 175–page transcript of the interrogation. Appellant entered a guilty plea, conditioned on the appeal of the denial of his motion to suppress.

▆▆▆ Appellant alleges that the waiver of his right to counsel was coerced. The standard of review for a motion to suppress requires a two-step determination. *Welch v. Commonwealth*, 149 S.W.3d 407 (Ky.2004). The factual findings by the trial court are reviewed under a clearly erroneous standard, and the application of the law to those facts is conducted under *de novo* review. *Id.* at 409.

▆▆▆ In order to use statements, whether exculpatory or inculpatory, made by a defendant subjected to custodial interrogation, the prosecution must demonstrate that the Appellant was advised of his Fifth Amendment rights, including the right to remain silent and the right to an attorney. *Miranda v. Arizona*, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d 694. These rights may be waived and the statements may be used against the defendant if the waiver is knowing, voluntary, and intelligent. *Id.* Once an accused has expressed a desire to deal with the police only through counsel, he is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversa-

tions with the police. *Edwards v. Arizona*, 451 U.S. 477, 484–485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981).

In the present case, Appellant has failed to show there was clear error in the trial judge's factual findings. The trial judge found that Appellant initiated conversation with detectives after invocation of the right to counsel, and that Appellant's waiver was not coerced. Although Appellant contended that he did not initiate conversation and that Detective Arnold threatened him, there was no evidence in the lengthy interrogation transcript to support this contention. In contrast, the testimony of the detectives and the transcript of the interrogation supported the trial court's findings. Taking note of the fact that the record contained transcriptions of the interviews in which Appellant was repeatedly advised of his rights, the trial judge commented that this was one of the best cases in terms of proof she had ever had. Given the unique position of the trial judge to assess the credibility of the witnesses' testimony on this issue, and the lack of support for Appellant's version of events, we conclude there was substantial evidence to accept the facts as the trial judge found them.

▆▆▆ The trial judge also correctly applied the law to these facts. Appellant argues that the interrogating detectives were wrong in concluding that Appellant had waived his previously invoked right to counsel and that they were free to interrogate him. He cites the rule that: "Once a suspect invokes the *Miranda* right to counsel for interrogation regarding one offense, he may not be reapproached regarding *any* offense unless counsel is present." *McNeil v. Wisconsin*, 501 U.S. 171, 177, 111 S.Ct. 2204, 2208, 115 L.Ed.2d 158 (1991) (emphasis in original), citing *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct.

**66**

2093, 100 L.Ed.2d 704 (1988). However, in the case at bar, the police did not "reapproach" or initiate questioning with Appellant; rather, Appellant spoke to the detective.

■ To determine, pursuant to *Edwards*, if the accused has waived the right to counsel after initiating conversation, the court must determine whether (1) the inquiries or statements were intended to initiate a conversation with authorities and (2) there was a waiver of the right to counsel which was voluntary, knowing, and intelligent given the totality of the circumstances. *Oregon v. Bradshaw*, 462 U.S. 1039, 1045–1046, 103 S.Ct. 2830, 2835, 77 L.Ed.2d 405 (1983). In the present case, the trial court found that Appellant reinitiated the conversation with Detective Arnold, after which Appellant's rights were read to him again. The trial court found that this was voluntary on Appellant's part. The court concluded that Appellant was frequently advised of his rights and there was no evidence to show that his waiver was not completely voluntary. If there could have been any doubt that Appellant's initial waiver was not voluntary, knowing, and intelligent, numerous subsequent waivers erased the last shred of it. We find no error in the trial court's application of the law to these facts.

Because the trial judge's factual findings were not clearly erroneous and these facts were correctly applied to the law, we affirm the trial court's denial of Appellant's motion to suppress.

II.  Application of the Sentencing Cap

■ At the sentencing hearing, Appellant was given consecutive sentences on all counts totaling 470 years. The Commonwealth argued that because the offenses listed in indictment 02–CR–002050 occurred while Appellant was on confinement or probation for a 1996 juvenile offense, the sentencing cap of seventy (70) years in KRS 532.110(1)(c) did not apply pursuant to an exception found in KRS 533.060(2). See *Corbett v. Commonwealth*, 717 S.W.2d 831, 833 (Ky.1986). At the sentencing hearing, the trial court agreed with the Commonwealth that Appellant was on juvenile probation, without specifying the source in the record of this conclusion. On appeal, Appellant argues that the 70–year sentencing cap applies to him and the 470–year sentence was contrary to law.

■ Initially, the Commonwealth contends that this court should not reach the question of the propriety of the sentence because it was not preserved for appellate review below. The Commonwealth claims that defense counsel conceded that Appellant was on probation as a juvenile at the sentencing hearing. We agree with Appellant that his argument as to sentencing and submission of a brief in favor of the application of the sentencing cap preserved this issue for appellate review. Moreover, our review of the record discloses no concession by Appellant regarding the probation question. In addition, because this concerns Appellant's sentence, we do not find it fatal that Appellant may have made other arguments in the trial court and now makes novel arguments on appeal. Sentencing is jurisdictional, and "all defendants have the right to be sentenced after due consideration of all applicable law." *Hughes v. Commonwealth*, 875 S.W.2d 99, 100 (Ky.1994); *Wellman v. Commonwealth*, 694 S.W.2d 696, 698 (Ky.1985). Thus, sentencing issues may be raised for the first time on appeal and Appellant is proceeding properly before this Court.

■ Appellant argues that the court erred in relying on the exception found in KRS 533.060(2) because his juvenile of-

fense did not fit within its terms. That provision states:

> When a person **has been convicted** of a felony and is committed to a correctional detention facility and released on parole or has been released by the court on probation, shock probation, or conditional discharge, and is convicted or enters a plea of guilty to a felony committed **while on parole, probation, shock probation, or conditional discharge**, the person shall not be eligible for probation, shock probation, or conditional discharge and the period of confinement for that felony **shall not run concurrently** with any other sentence.

(Emphasis supplied.) Appellant argues that this provision requiring that the sentences not run concurrently, is inapplicable because (1) he was not "convicted of a felony" by the 1996 adjudication and (2) he was not on probation at the time he committed the subsequent felonies.

▮▮▮▮ Appellant correctly notes that juvenile adjudications are not considered convictions pursuant to the Unified Juvenile Code. KRS 635.040 states, "No adjudication by a juvenile session of District Court shall be deemed a conviction. . . ." A juvenile adjudication is not tantamount to a criminal conviction, but is instead an adjudication of a status. *Phelps v. Commonwealth*, 125 S.W.3d 237, 239 (Ky.2004). We agree with Appellant that the General Assembly is presumed to know its enactments, is aware that juvenile adjudications will not result in convictions, and so did not intend that offenses committed while one is a juvenile would trigger the provision in KRS 533.060(2) requiring consecutive sentences.

Additionally, Appellant directs us to the utter lack of evidence that Appellant was placed on probation while under the jurisdiction of the juvenile court in 1996. In the sentencing court, the Commonwealth cited the trial court to Appellant's tenth juvenile petition on July 29, 1996. The 1996 charge was for second-degree burglary; Appellant was committed to the Cabinet for Families and Children[2] for placement in a home. The Commonwealth contended that after Appellant's adjudication he was committed to the Cabinet either in confinement or on probation until he reached the age of majority. Yet there is no indication in the 1996 order that Appellant was on probation for the burglary charge. The Commonwealth argues that the fact that the records "do not sufficiently spell out the exact parameters" of the disposition of the juvenile case, it was not error for the trial court to find that appellant was on probation. We believe the lack of a record is the reason to find error, particularly since merely being released by the Cabinet does not equate to an order of a court granting probation.

Therefore, if KRS 533.060(2) has no application to this case, we are left with the other limitation on sentencing, KRS 532.110(1)(c).[3] KRS 532.110 provides that when multiple sentences are imposed on a defendant the court shall determine as a matter of discretion whether the sentences shall run concurrently or consecutively. The exception in KRS 532.110(1)(c) states:

> The aggregate of consecutive indeterminate terms shall not exceed in maximum length the longest extended term which would be authorized by KRS 532.080 for the highest class of

**2.** Now the Department of Juvenile Justice.

**3.** The 70 year cap on consecutive sentences took effect July 15, 1998. Pursuant to KRS 446.110, the amendment including the 70

year cap may govern his sentence even on those offenses Appellant committed prior to the effective date of that statutory provision.

crime for which any of the sentences is imposed. In no event shall the aggregate of consecutive indeterminate terms exceed seventy (70) years.

We agree that the 70 year limitation applies in this case. The maximum sentence that Appellant should have received in this case was 70 years.

In other cases in which the statutory limit was exceeded, we remanded to the trial court for imposition of sentence which would fulfill the statutory maximum. *See e.g. Gibbs v. Commonwealth,* 208 S.W.3d 848 (Ky.2006) and *Young v. Commonwealth,* 968 S.W.2d 670 (Ky.1998). Therefore, we believe it is necessary for the trial court to fashion a new sentence which does not exceed the seventy year aggregate provided in KRS 532.110(1)(c).

For the foregoing reasons, we remand this case to the Jefferson Circuit court for imposition of sentence not to exceed the 70 year maximum imposed by operation of law.

All sitting. All concur.